## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALEXANDRU KOVACS MIHAELA APETREI, and BEATICE KOVACS**<br>**14-22 143 Street, 1ˢᵗ Floor,**<br>**Whitestone, NY 11357**<br><br>**Plaintiffs**<br><br>**-against-**<br><br>**UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,**<br>20 Massachusetts Ave NW,<br>Washington DC 20529<br><br>**Defendant** | **Case No.**<br><br>**COMPLAINT** |

### INTRODUCTION AND SUMMARY

1.This is an action to hold unlawful and set aside the transparently unlawful and in fact absurd decision of the United States Citizenship and Immigration Services denying an otherwise approvable application for employment authorization merely because plaintiffs Alexandru Kovacs and Mihaela Apetrei's (the Kovacs) application for asylum has been temporarily (and unlawfully) "administratively closed".

2. As the plaintiffs will now show, not only is there no lawful basis for USCIS to administratively close any application for asylum after interview, but, even if there was, administrative closure is not a decision, and therefore the Kovacs' application was not "decided" as claimed by the USCIS in denying employment authorization.

**PARTIES**

3. The plaintiffs Alexandru Kovacs and Mihaela Apetrei are citizens and nationals of Romania who last entered the U.S. as parolees. They reside in the State of New York with plaintiff Beatrice Kovacs, their profoundly disabled U.S. citizen daughter.

4. The United States Citizenship and Immigration Services is the agency with responsibility for the adjudication of Alexandru Kovacs and Mihaela Apetrei's applications for asylum and employment authorization.

5. Alexandru Kovacs and Mihaela Apetrei both have standing to complain of the unlawful denial of their applications for employment authorization because it deprives them of any means of supporting themselves or their daughter Beatrice in the United States.

6. Beatrice Kovacs is a natural born US citizen who is severely disabled. She has standing to complain of this action because the denial of employment authorization to her parents also deprives her of any means of support, a harm which falls upon her with particular severity due to her multiple special needs.

7. This being an action under the Administrative Procedure Act, a law of the United States, this Court has jurisdiction over this matter under 28 U.S.C. Section 1331.

**BRIEF STATEMENT OF PERTINENT FACTS**

8. On approximately August 24, 2017, the plaintiffs Alexandru Kovacs and Mihaela Apetrei were granted advance authorization for parole ("advance parole") by the USCIS.

9. On September 22, 2017, Alexandru Kovacs and Mihaela Apetrei were paroled into the United States pursuant to said advance authorization.

10. On September 17, 2018, Alexandru Kovacs and Mihaela Apetrei applied  to the USCIS for asylum. Alexandru Kovacs was the principal applicant and Mihaela Apetrei a derivative, but both maintain they will suffer persecution in Romania.

11. The Kovacs applied for asylum because they are the parents of a disable child.

12. The Kovacs U.S. citizen daughter Beatrice suffers from seizures and is confined to a wheelchair. She is unable to speak, walk or run.

13. Not only is Romania completely unable and unwilling to provide necessary medical care to such a severely disable child, but has taken affirmative actions to trample on the rights of the child, and by extension, the family unit by forcibly confining such disabled children to institutions where the standard of care is appalling.

14. A  parent who provides care to a  disabled child  has been found to be eligible  for  asylum, along  with  the  child herself, if the child is subject to persecution. *Tchoukhrova v. Gonzales,*

404 F.3d. 1181 (9th Cir. 2005) (vacated on other grounds).[1] *See also Abay v. Ashcroft,* 368 F.3d 634, 642 (6th Cir. 2004) (holding that a mother can be eligible for asylum based on her fear of witnessing her daughter being subjected to forced genital mutilation).

15. On February 19, 2019, the Kovacs applied to the USCIS for employment authorization pursuant to 8 C.F.R §§ 208.7 & 274a.12(c)(8).

16. On May 7, 2019 the Kovacs were interviewed by USCIS on their application for asylum

17. On June 10, 2019 the USCIS denied the Kovac's applications for employment authorization because

> records indicate that your Application for Asylum and Withholding of Removal (I-589), filed on September 17, 2018, was administratively closed on May 28, 2019 by the Asylum Office. Therefore, the request for asylum, upon which this application is dependent is considered having been decided. As a result, you are not, at this time, entitled to employment authorization pursuant to 8 CFR 274a.12(c){8).

## CAUSE OF ACTION

I.  THE DENIAL OF EMPLOYMENT AUTHORIZATION WAS NOT IN ACCORDANCE WITH LAW BECAUSE THE USCIS HAD NO AUTHORITY TO "ADMINISTRATIVELY CLOSE" THE KOVACS' APPLICATION FOR ASYLUM AFTER THEY WERE INTERVIEWED REGARDING IT, BUT IN FACT WAS REGULATORILY MANDATED TO EITHER GRANT THEIR APPLICATION OR REFER IT TO THE IMMIGRATION COURT

---

[1] The Supreme Court vacated the decision on procedural grounds alone and held that an agency determination is required in the first instance as to whether the applicants are members of a particular social group. *Gonzales v. Thomas*, 543 U.S. 183 (2006). Importantly, the Supreme Court never held that "parents of a disabled child" were not a cognizable social group,

18. No known statute, regulation, policy or case authorizes the USCIS to "administrative close" and asylum application. In fact the USCIS's Administrative Appeals Office rountinelly refers "administrative closure" as something "used to temporarily remove a case from Immigration Judge's calendar or from the Board of Immigration Appeal's docket" Matter of (Name and Case Number Withheld):

https://www.uscis.gov/sites/default/files/err/M1%20%20Application%20for%20Temporary%20 Protective%20Status/Decisions_Issued_in_2013/APR302013_03M1244.pdf, and not something applicable to USCIS at all.

19. But even if USCIS  policy did allow for administrative closure in certain circumstances, it would not here where agency regulations expressly limit the USCIS in general to four (4) options after it has interviewed an applicant for asylum: grant, refer, dismiss or deny. Further, under the particular circumstances of the Kovacs, USCIS has only two: grant or refer.

20.  8 C.F.R. § 208.14 provides in relevant part that:

> (b) … In any case within the jurisdiction of the RAIO, unless otherwise prohibited in § 208.13(c)[2], an asylum officer may grant, in the exercise of his or her discretion, asylum to an applicant who qualifies as a refugee under section 101(a)(42) of the Act, and whose identity has been checked pursuant to section 208(d)(5)(A)(i) of the Act.
> (c) Denial, referral, or dismissal by an asylum officer. If the asylum officer does not grant asylum to an applicant after an interview conducted in accordance with § 208.9, or if, as provided in § 208.10, the applicant is deemed to have waived his or her right to an interview or an adjudication by an asylum officer, the asylum officer shall deny, refer, or dismiss the application, as follows:…
> (4) Alien paroled into the United States whose parole has expired or is terminated.
> (i) Alien paroled prior to April 1, 1997, or with advance authorization for parole. In the case of an applicant who was paroled into the United States prior to April 1, 1997, or who, prior to departure from the United States, had received an advance authorization for parole,

---

[2] Pertaining to certain "mandatory denials" not relevant here.

the asylum officer shall refer the application, together with the appropriate charging documents, to an immigration judge for adjudication in removal proceedings if the parole has expired, the Service has terminated parole, or the Service is terminating parole through issuance of the charging documents, pursuant to § 212.5(d)(2)(i) of this chapter.

21. Inasmuch as the Kovacs are persons who, prior to departure from the United States, had received an advance authorization for parole, who had subsequently been paroled into the U.S. and whose parole is now expired, a USCIS asylum officer *shall* either grant them asylum, as provided in § 208.14(b) or he *shall* refer the application, together with the appropriate charging documents, to an immigration judge for adjudication in removal proceedings. Choosing one of these two options is mandatory and he has no other.

22. "'Shall' most commonly means 'must.' *See* BLACK'S LAW DICTIONARY 1407 (8th ed. 2004) (defining "shall" as "has a duty to; more broadly, is required to"); *see also* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1081 (Merriam-Webster 1990) ("shall" is "used in laws, regulations, or directives to express what is mandatory"); *accord* Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/shall (last visited May 30, 3008)." *FTC v. Tarriff*, 557 F. Supp. 2d 92, 95 (D.D.C. 2008).

23. Accordingly, regardless of whether the USCIS has the authority to administratively close a request for benefits at all, of which there is absolutely no reason to believe it does, it is expressly prohibited from doing so in the instant matter, where it has interviewed applicants for asylum who previously received advance authorization for parole, were subsequently paroled into the U.S., and whose parole thereafter expired.

WHEREFORE, inasmuch as the denial of employment authorization was premised solely upon an action the USCIS was expressly prohibited from taking, and the Kovacs' application for asylum was not, in any event, decided,  the denial  was not in accordance with law, and should be held unlawful and set aside. 5 U.S.C. § 706(2).


II.     ADMINISTRATIVE CLOSURE IS A TEMPORARY PAUSE OF AN APPLICATION, NOT A DECISION

24. The USCIS' denial of employment authorization relied upon 8 C.F.R. § 274a.12(c)(8) which provides in relevant part that  employment authorization may be granted to "An alien who has filed a complete application for asylum or withholding of deportation or removal pursuant to 8 CFR part 208, whose application:(i) Has not been decided, …". Based on this language, it concluded that because the Kovacs' application for asylum had  been administratively closed, it had been decided, and therefore that they were not eligible for employment authorization.


25. The Board of Immigration Appeals has held the practice of administrative closure to be "a docket management tool that is used to **temporarily pause** removal proceedings," *Matter of W-Y-U-*, 27 I&N Dec. 17, 18 (BIA 2017)(emphasis added).


26. It is, or at least should be, self-evident to any literate person that to "temporarily pause" a matter is not to decide it.


27. Nevertheless, to belabor the obvious, it should be noted that: "The word "decide" is defined in (Funk & Wagnalls New Standard Dictionary) as follows: "To determine the issue or conclusion of; * * * to end by a decision or judgment; * * * as, to decide a dispute; decide who is right." Geo.

S. Bush & Co. v. United States, 22 Cust. Ct. 158, 187 (U.S. 1949). see BLACK'S LAW DICTIONARY at 467 (defining "decision" as "[a] judicial or agency determination after consideration of the facts and the law")." Hime v. McDonald, 28 Vet. App. 1, 7 (U.S. 2016). Since Black's Law Dictionary defines a "determination" as "A final decision by a court or administrative agency", Black's Law Dictionary 514 (9th ed. 2009), the inescapable conclusion is that a "decision" means a final decision by a court or administrative agency, and so to decide means to make a final decision.

28. Finally, to eliminate all doubt, 8 C.F.R. § 208.7(a)(1) provides in relevant part "An applicant whose asylum application has been **denied** by an asylum officer or by an immigration judge within the 150-day period shall not be eligible to apply for employment authorization." (emphasis added).

29. This regulation demonstrates unambiguously that when 8 C.F.R. § 274a.12(c)(8) refers to an application for asylum being "decided", it means "denied", since any other interpretation would be irreconcilable with 8 C.F.R. § 208.7(a)(1).

30. Since there is nothing final about a "temporary pause", the administrative closure of the Kovacs' application for asylum, even if there is such a thing in USCIS jurisprudence, and even if it is allowable here, is not a decision, and therefore their application was not decided.

31. Further, and in any event, it is most certainly not a denial.

WHEREFORE the USCIS decision denying the Kovacs' application for employment authorization because their asylum application was supposedly administratively closed is not in accordance with law and should be held unlawful and set aside.


Respectfully Submitted


s/*Michael E. Piston*
Michael E. Piston (MI 002)
Attorney for the Plaintiffs
225 Broadway Suite 307
New York, NY 10007
646-845-9895